USDC SCAN INDEX SHEET

















JPP   6/14/06   16:32

3:06-CV-01222   DAW INDUSTRIES INC V. HANGER ORTHOPEDIC

*1*

*NTCREM.*

90246

1  **FOLEY & LARDNER LLP**
   ATTORNEYS AT LAW
   402 W. BROADWAY, SUITE 2300
2  SAN DIEGO, CA 92101-3542
   TELEPHONE: 619.234.6655
3  FACSIMILE: 619.234.3510

   MICHAEL P. MCCLOSKEY, CA BAR NO. 106051
4  MICHAEL A. NARANJO, CA BAR NO. 221449
   KATHERINE P. SOBY, CA BAR NO. 241073
5  ATTORNEYS FOR DEFENDANT HANGER
   ORTHOPEDIC GROUP, INC.

6

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10  DAW INDUSTRIES, INC., a California      )   CASE No.: **06CV 1222   JAH NLS**
    corporation,                           )
11                                         )   **NOTICE OF REMOVAL OF**
                                           )   **ACTION UNDER 28 U.S.C. § 1441**
12                  Plaintiff,             )   **(DIVERSITY OF CITIZENSHIP)**
                                           )
13          v.                             )
                                           )
14  HANGER ORTHOPEDIC GROUP,               )
    INC.; OTTO BOCK HEALTHCARE             )
15  U.S., INC.; and DOES 1 through 10,     )
    inclusive,                             )
16                                         )
                   Defendants.             )
17                                         )
                                           )
18  ─────────────────────────────────     )

19

20          TO THE CLERK OF THE ABOVE-ENTITLED COURT:

21          PLEASE TAKE NOTICE that Defendant Hanger Orthopedic Group, Inc.

22  ("Defendant" or "Hanger") hereby removes this action to the United States District Court

23  for the Southern District of California.  The grounds for removal are:

24          1.      The Court has original jurisdiction under 28 U.S.C. section 1332, and is one

25  which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C.

26  section 1441(a), as it involves a civil action between citizens of different States and the

27  amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

28          2.      Plaintiff commenced this action on or about May 8, 2005, by filing a

                                          -1-
                                                        NOTICE OF REMOVAL OF ACTION
                                                                      UNDER 28 U.S.C.
    SDCA_288359.1                                       CASE NO. _____

1 | complaint in the Superior Court of the State of California, for the County of San Diego,
2 | Case No. GIC 865613.

3 |     3.    The 30-day period for removal of this action has not yet expired, as the date
4 | upon which the first defendant was served a copy of the Summons and Complaint was
5 | May 11, 2006.

6 |     4.    A true and correct copy of the Summons and Complaint, including all
7 | attachments, is attached as Exhibit "A."  A true and correct copy of Plaintiff's Notice of
8 | *Ex Parte* Hearing to Hanger, Dale Berry and Otto Bock Healthcare U.S., Inc.,
9 | *erroneously herein sued as Otto Bock Healthcare, USA* ("Otto Bock") is attached as
10 | Exhibit "B."  A true and correct copy of the Stipulation Concerning the Preservation of
11 | Evidence and the San Diego County Superior Court's Order approving the Stipulation is
12 | attached as Exhibit "C."  No other process, order or other pleading in this action has been
13 | received by defendants to date.  No other process, order or other pleading has been filed
14 | by defendants to date.

15 |     5.    The District Court of the United States for the Southern District of
16 | California has original jurisdiction under 28 U.S.C. section 1332, and the action is one
17 | that may be removed to this Court by defendant pursuant to 28 U.S.C. section 1441 based
18 | upon the following:

19 |     (a)    Complete diversity exists in that plaintiff is diverse from each
20 | defendant.  Plaintiff Daw Industries, Inc. is a California corporation with its
21 | principal place of business in San Diego. (*See* Exhibit "A," ¶ 1.) Defendant
22 | Hanger was at the time of the filing of the Complaint, and still is, a Delaware
23 | corporation with its principal place of business in the State of Maryland. (*See*
24 | Declaration of George McHenry.)  As Plaintiff itself concedes, Defendant Otto
25 | Bock was at the time of the filing of the Complaint, and still is, a Minnesota
26 | corporation with its principal place of business in the State of Minnesota. (*See*
27 | Exhibit "A," ¶ 6.) The fictitious defendants named in the Complaint are
28 | disregarded for purposes of assessing diversity of citizenship; and

NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C.

CASE NO. _____

(b) The amount in controversy exceeds the sum of $75,000, inclusive of anticipated attorneys' fees, and exclusive of interest and costs. (*See* Exhibit "A," ¶¶ 102, 110, 113, 137.)

6. All other defendants who have been served with the Summons and Complaint have joined in this Notice of Removal, as evidence by the Joinder of defendant Otto Bock, filed concurrently with this Notice.

7. Hanger will promptly file a copy of this Notice with the Clerk of the Superior Court for the State of California, County of San Diego.

Wherefore, Defendant Hanger Orthopedic Group, Inc. prays that this action be removed from the Superior Court of the State of California for the County of San Diego to the United States District Court for the Southern District of California, and for such further relief as may be just and proper.

Dated:   June _9_, 2006

FOLEY & LARDNER LLP
Michael P. McCloskey
Michael A. Naranjo
Katherine P. Soby

_____
Katherine P. Soby
Attorneys for Defendant, HANGER
ORTHOPEDIC GROUP, INC.

-3-

NOTICE OF REMOVAL OF ACTION
UNDER 28 U.S.C.
CASE NO. _____

SDCA_288359.1



Servi● Date 5/11/06

## SUMMONS
### (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HANGER ORTHOPEDIC GROUP, INC.; OTTO BOCK HEALTHCARE,
USA; and DOES 1 through 10, inclusive,

<div>

FOR COURT USE ONLY
CIVIL BUSINESS OFFICE
CENTRAL DIVISION

2006 MAY -8 AM 4:29

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY. CA

</div>

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DAW INDUSTRIES, INC., a California corporation,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff.   A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case.   There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you.   If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta.  Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* <br> SUPERIOR COURT OF SAN DIEGO, CALIFORNIA <br> 330 West Broadway <br> San Diego, CA 92101 | CASE NUMBER <br> *(Número del Caso):* <br> **GIC 865613** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Edward J. McIntyre (SBN 80402)          (619) 238-4823   (619) 231-4755
Solomon Ward Seidenwurm & Smith, LLP
401 B Street, Suite 1200, San Diego, CA 92101

| DATE: **MAY - 8 2006** | Clerk, by | **L Master** | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Otto Bock Healthcare, USA

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Business Entity, form un known
4. ☐ by personal delivery on *(date):* 5/ /06

[SEAL]

Legal Solutions Plus

Page 1 of 1

Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

FILED
CIVIL BUSINESS OFFICE 3
CENTRAL DIVISION

2006 MAY -8  AM 4: 29

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1  EDWARD J. MCINTYRE [SBN 80402]
   EMcIntyre@swsslaw.com
2  SOLOMON WARD SEIDENWURM & SMITH, LLP
   401 B Street, Suite 1200
3  San Diego, California 92101
   Telephone: (619) 231-0303
4  Facsimile: (619) 231-4755

5  Attorneys for DAW INDUSTRIES, INC.

6

7

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF SAN DIEGO

10

11 DAW INDUSTRIES, INC., a California        CASE NO. GIC   865513
   corporation,
12                                           COMPLAINT FOR:
                Plaintiff,                   1. Restraint Of Trade In Violation Of The
13                                              Cartwright Act—Business &
   v.                                           Professions Code § 16720
14                                           2. Restraint Of Trade In Violation Of The
   HANGER ORTHOPEDIC GROUP, INC.;               Cartwright Act—Business & Professions
15 OTTO BOCK HEALTHCARE, USA; and              Code §§ 16720, et seq.
   DOES 1 through 10, inclusive,             3. Unfair Competition and Unlawful
16                                              Business Practices, California Business
                Defendants.                     & Professions Code §§ 17200, et seq.;
17                                              and
                                             4. Trade Liable
18

19

20

21

22

23

24

25

26

27

28

P:282531.1:57089.003

                          COMPLAINT

# I
## INTRODUCTION

This case exemplifies the worst of unfair competition.  Two dominant members in a vital professional industry used, and conspired to use, their market dominance to try to crush a competitor—to the disadvantage of disabled patients who need cost-effective, state-of-the-art artificial limbs, and of the federal and state agencies, and other third parties, which, as a result, are forced to pay substantially more for prosthetic devices.  In the process, these co-conspirators have violated California's antitrust laws and its protections against unfair competition.  Now that they have been caught, these market dominators must pay for what they have done in the past and learn that even they must participate fairly in the marketplace—or not at all.

# II
## PARTIES

### DAW Industries, the Plaintiff.

1.      DAW Industries, Inc. is a California corporation with its principal place of business in San Diego.

2.      Following the lead of his father, the French soccer star David Belzidsky— whose soccer career a World War II bombardment cut short, and who founded DAW in France—Hugo Belzidsky founded DAW in the United States.

3.      DAW engages in, and has engaged in, the research and development of prosthetic and orthotic devices, and it manufactures and distributes such devices throughout the United States, Europe and Asia.

4.      Over the years, DAW Industries has set, and received industry recognition for, uncompromising standards of creative design, optimum performance and dedication to patient care and for pushing the outer limits of science, technology and patient management to help hundreds of thousands of amputees enjoy active, quality life-styles.

### The Defendants.

5.      Hanger Orthopedic Group, Inc. is, on information and belief, a Delaware corporation, with offices throughout the United States and in California. Hanger does business in

1   San Diego County and it committed many of the wrongs that give rise to this complaint in San

2   Diego County.

3        6.    Otto Bock Healthcare, USA is, on information and belief, a Minnesota corporation,

4   headquartered in Minneapolis, with offices throughout the United States and in California.  Otto

5   Bock is, on information and belief, a subsidiary or affiliate of Otto Bock GmbH, the German

6   company, wholly owned by the Näder family.  Otto Bock does business in San Diego County and

7   it committed many of the wrongs that give rise to this complaint in San Diego County.

8        7.    DAW sues defendants Does 1-10, inclusive, under fictitious names pursuant to

9   Code of Civil Procedure § 474 because DAW does not yet know their true names.  When DAW

10   learns the true names of these Doe defendants, it will seek leave to amend this complaint and

11   identify the Doe defendants by their true names.

12        8.    DAW is informed and believes that each of the fictitiously named defendants is

13   responsible in some manner for the acts alleged in this complaint and is responsible for the

14   damages that DAW has suffered.

15        9.    DAW is informed and believes that at all times mentioned in this complaint, each

16   defendant acted as the agent, servant, or employee or, and co-conspirator with, each other

17   defendant, and that in doing the things alleged, each acted within the scope of his, her or its

18   authority as such agent, servant, or employee, and within the scope of the conspiracy alleged, and

19   with the permission of the other defendants.

20   <center>**III**<br>**VENUE**</center>

21

22        10.    Venue in San Diego County is proper because the acts alleged occurred, at least in

23   substantial part, in this county.

24   <center>**IV**<br>**THE CONSPIRACY**</center>

25        11.    Commencing sometime in at least early 2001, and continuing after that, Hanger,

26   Otto-Bock and, on information and belief, also Does 1 through 10, according to a common design,

27   plan, agreement and/or scheme, willfully and maliciously conspired to restrain trade and otherwise

28   to violate the antitrust laws and engage in unfair and illegal trade practices.

12.    Further, on information and belief, these same defendants conspired and continued to conspire to perpetuate and foster their unlawful and illegal trade practices even as this complaint is being filed.

13.    The conspiracy among these defendants was unlawful and made for the purpose of gain for each of them.

14.    As a result of and in furtherance of their conspiracy, on information and belief, these defendants all received financial gain as a result of their unlawful and illegal trade practices and violations of the antitrust laws.

15.    More importantly, Hanger and Otto Bock sell prosthetic devices at prices substantially higher than DAW charges for comparable devices which provide the same or greater patient function.

16.    As a direct and proximate result of this conspiracy, DAW has been injured in its business and property and has suffered, and continues to suffer, money damages, as DAW alleges in greater particularity below.

## V
## MATERIAL FACTS

### The Relevant Market

17.    The relevant product market for purposes of this action, and the market in which Hanger and Otto Bock have conspired and have illegally and unfairly used their market dominance to damage DAW and the consuming public is the market for prosthetic knees with a microprocessor or micro-controller.

18.    DAW is a competitor of both Hanger and Otto Bock, in California and throughout the United States, in the development, manufacture and sale of such prosthetic knees.

19.    DAW denominates its product in this market the TGK-5PS0SLK, Self-Learning Knee, also know as DAW's Self-Learning Microprocessor 5-Bar Knee.

20.    The relevant geographic market is both California and also the whole United States.

21.    Otto Bock purports to have similar prosthetic knee products—the C-Leg—for sale in the relevant geographic market.

22.     Hanger made the decision, in conspiracy with Otto Bock, aggressively to press distribution of the Otto Bock knee.

23.     DAW sells its products, and products that others manufacture and which DAW distributes exclusively in the United States, to prosthetics laboratories throughout the United States.

24.     Hanger, on its own and through its wholly-owned subsidiary, Southern Prosthetic Supply (SPS), sells its own products, and products that others manufacture, to prosthetics laboratories throughout the United States.

25.     In addition, Hanger also sells products to its "captive" prosthetics laboratories.

26.     Hanger, through SPS, is a direct competitor of DAW in such sales.

27.     Among the competitive products Hanger sells is the Otto Bock C-Leg.

28.     Otto Bock also sells product, including the C-Leg, to its own prosthetic laboratories throughout the United States and in such sales it also is a direct competitor of DAW.

29.     The market adversely affected by the Hanger and Otto Bock conspiracy includes all prosthetic laboratories that serve active amputees who need a prosthetic knee for maximum recovery and use.

Insurance Reimbursement and "L" Codes.

30.     Insurance and governmental reimbursement is a critical factor, not only in the kind of care an amputee receives, but also for the nature and kind of device that a practitioner can proscribe for any given amputee.

31.     Such reimbursement is in function of the "L" Codes that are permissible for any given product.

32.     "L" Codes, simply stated, are assigned based on the functions and level of functions for which a patient qualifies to achieve the best outcome and the functions that any given device provides.

33.     By way of simple example, a seventy-five-year-old diabetic amputee who needs only to be able to move about the house assisted by a walker has a markedly different level of function from a vigorous, athletic, twenty-year-old veteran who lost a limb in Iraq and who needs

1   two functioning legs to pursue her or his career.

2        34.     Consequently, the kind of knee—and the "L" Codes associated with it and hence

3   the reimbursement for it—that the seventy-five-year-old diabetic amputee needs, or can even use,

4   is markedly different from that with the young, veteran amputee both needs and can use.

5        35.     Such "L" Codes are promulgated in the first instance by the Statistical Analysis

6   Durable Medical Equipment Regional Center (SADMERC), a national entity that provides

7   services under contract to the Centers for Medicare and Medicaid services.

8        36.     For the orthotics and prosthetics professions, such L-Codes are then sanctioned by

9   the American Orthotic & Prosthetic Association (AOPA), a national professional organization.

10       37.     A practitioner can only seek insurance reimbursement consistent with appropriate

11  "L" Codes—even if a specific device, in fact, provides all the functions that would allow different

12  or additional "L" Codes, thereby permitting higher reimbursement.

13       38.     Hanger and Otto Bock, as a direct element of their conspiracy, have used and

14  continue to use their dominant position in the market and the whole industry, and deliberately

15  manipulated, among other things, the assignment of "L" Codes to DAW's competing SLK knees.

16  The Hanger/Otto Bock Plot Begins.

17       39.     In 1986, DAW hired Dale Berry as its Director of Prosthetics and Director of

18  Marketing and Sales.  Then, in November 1987, DAW hired Stuart Marquette as Director of

19  Orthotics.

20       40.     For a period of ten years, the two traveled the United States lecturing and

21  promoting DAW to orthotists and prosthetists, traveling every other week to a different city.

22       41.     DAW's sales increased dramatically as a result.

23       42.     Then Berry approached Hugo Belzidsky, DAW's founder and president, and

24  demanded that he be made the Vice President and have direct supervision of Stuart Marquette.

25       43.     Hugo Belzidsky, knowing that this would cause Marquette to resign, declined.

26       44.     To sew discord at DAW, Berry called Stuart Marquette that night and said that he,

27  Berry, had demanded a $50,000 salary increase, that Hugo Belzidsky had refused and, therefore,

28  that he quit.

P:202531.1:57089.003                          -5-
                                          COMPLAINT

45.     Berry then called Mr. Belzidsky and told him that Stuart Marquette intended to demand a $50,000 increase the very next day.

46.     Both statements were false; Berry's purpose was transparent as soon as Mr. Belzidsky and Mr. Marquette compared notes.

47.     Berry resigned his position at DAW and took a job at Novacare, Inc., a prosthetics company that eventually Hanger acquired.

48.     Today, DAW is informed and believes, Berry is Vice President of Clinical Operations and part of Hanger's senior prosthetics management team.

**Hanger Escalates Its Anti-Competitive Conduct.**

49.     At a National Convention, Berry came to DAW's exhibit booth and stated that the SLK Knee did not qualify for the specific "L" Code for a micro-processor knee. The statement was false and Hanger and Berry knew it was false.

50.     Berry then called Hugo Belzidsky and stated that the SLK Knee did not qualify for the micro-processor "L" Code and wanted DAW to provide him—as Hanger's Director of Clinical Services—additional information concerning the SLK Knee.

51.     Berry then wrote to DAW stating that he alone would approve all DAW knees on behalf of Hanger and that the DAW knees did not meet Hanger's "stringent standards."

52.     During the period June through September 2002, DAW's sales of its SLK knee to United States prosthetics were in excess of $235,000.

53.     Then, on September 20, 2002, Berry first called and then wrote to Hugo Belzidsky claiming that Hanger had a "new" procedure for buying Graph-Lite knees from DAW, and challenging the recommended "L" codes for DAW's product. Berry claimed that he would have unilateral approval of such knee units at Hanger.

54.     DAW responded asking Hanger to identify which DAW knee or knees and which "L" codes were the subject of Hanger's concern.

55.     Hanger never responded.

56.     Rather, Hanger then began to demand to know all of the facilities that had purchased DAW knees.

57.    Hanger, using its dominant position in the orthotic and prosthetic industry, and on information and belief in combination and conspiracy with Otto Bock, instructed all of its facilities to stop using DAW knee products.

58.    In spite of DAW's repeated requests of Hanger—primarily addressed to Berry—for some explanation of Hanger's concerns about the "L" codes for DAW knees, Hanger refused to provide any such explanation.

59.    Rather, in combination and conspiracy with Otto Bock and the other defendants, Hanger simply instructed its practitioners to cease using all DAW products—with one, limited and unrelated exception, the prosthetic skin cover.

**The Plot Gets Worse.**

60.    In late-April 2003, the Veterans Administration requested from the AAOP information concerning the micro-processor knee units available for its veterans returning from Afghanistan, as well as for anticipated amputee veterans who would be returning from the imminent invasion of Iraq.

61.    The Board of Directors of the AAOP—considered the scientific society in this field—elected to have a symposium to evaluate the new wave of micro-processors knees that were on the market.

62.    The Veterans Administration needed the information in short order.

63.    A Hanger employee, Frank Bostock, President, at the time, of The Academy of Orthotics and Prosthetics (The Academy) changed the definition to exclude DAW and appointed Berry to be the head of the committee that made the decision to come up with a definition that purposely excluded DAW's SLK. Berry was in charge of that symposium. Berry then used this new position of dominance and control to establish a protocol and definitions to be used in the symposium.

64.    In pursuit of Hanger and Otto Bock's anti-trust conspiracy, Hanger—through Berry—purposely established definitions and protocol that would eliminate DAW's SLK from any consideration.

65.    In May 2003, without any notice to DAW, Hanger and its co-conspirator Otto Bock

1   conducted the symposium.

2       66.    Neither Hanger nor Otto Bock contacted DAW nor invited it to present information

3   about its knees at the symposium.

4       67.    Worse, Hanger and Otto Bock hand-picked the participates and presenters who

5   attended the symposium, which DAW is informed and believes occurred at Walter Reed Medical

6   Center on May 21 and 22, 2003.

7       68.    Then, in mid-August 2003, DAW became aware that Berry had been nominated to

8   be the chair of The Academy's review committee of micro-processors (National Committee). The

9   results of the Hanger/Otto Bock-engineered symposium were to be presented at the Las Vegas

10  Academy conference.

11      69.    Hanger and Otto Bock deliberately sought to exclude DAW from any presentation

12  at that Las Vegas conference.

13      70.    DAW immediately protested its deliberate exclusion from the conference and, as a

14  sop, was given minimal presentation time.

15      71.    At the Las Vegas conference, DAW—through Stuart Marquette—gave a 45-minute

16  lecture on DAW's SLK knee unit.

17      72.    Otto Bock—using not only its and Hanger's dominant position in the marketplace

18  but also Hanger's dominance of the AAOP—had a half-day presentation on its electronic knees.

19      73.    In furtherance of Hanger's and Otto Bock's conspiracy, they made sure that DAW

20  did not have the opportunity to do a half-day presentation at the Las Vegas symposium.

21      74.    Hanger and Otto Bock made sure that it would hand-select presenters as well as

22  members of the committee overseeing the presentation; Berry of Hanger was chairman; Phillip

23  Conley, another Hanger employee was a member; as was James Breakey, a paid consultant to Otto

24  Bock; and Todd Anderson, another employee of Otto Bock. The balance of the committee never

25  ordered or used the DAW SLK knee nor had been involved in fitting one.

26      75.    It was patently clear that the committee—handpicked by Hanger and Otto Bock—

27  was not representative of the orthotics and prosthetics fields at large and, instead, exhibited then

28  anti-competitive bias in favor of Otto Bock, to Otto Bock and Hanger's economic advantage.

76.     Worse, Berry, as committee chairman, stated publicly that only two knees then currently on the market had micro-processors: one from Otto Bock; the other from Endolite.

77.     Berry, consistent with the continuing conspiracy between Hanger and Otto Bock, and among the other defendants, deliberately failed to mention DAW's SLK knee.

78.     Indeed, DAW had been designing and programming its micro-processor for its SLK knee for some nine years and its knee both met, and qualified for, any definition of a micro-processor knee as presented by The Academy.

79.     In October 2003, Hanger—again through Berry—started causing derogatory comments to be published in the industry that were both false and defamatory about DAW's SLK knee.

80.     Then, in November 2003, Hanger—again through Berry—continued its threats to exclude DAW's SLK knee from the prosthetics/orthotics market.

81.     In December 2003, Hanger and Otto Bock continued their anti-competitive conspiracy and campaign against DAW by telling third parties that, at a scheduled Academy meeting, Hanger would make sure that the position of the AAOP would be that DAW's SLK knee did not have a micro-processor—a factually false and defamatory statement—and that Hanger and Otto Bock would do everything in their power to sabotage DAW's efforts to provide its SLK knee to amputees who needed it, and also to provide a competitive product in the marketplace then dominated by Hanger and Otto Bock.

82.     Hanger and Otto Bock's conspiracy and campaign continued.

83.     In January 2004 Hanger, in conspiracy with Otto Bock, again made serious misrepresentations about DAW's products.

84.     In March 2004, Hanger and Otto Bock continued to use their dominant positions to prevent the AAOP from acknowledging the fact that DAW's SLK knee met every definition of a micro-processor knee.

85.     So long as The Academy's committee took the position that DAW's knee did not have a micro-processor, the Veterans Administration said that it could not accept the DAW SLK knee as a micro-processor knee.

86.   Meanwhile, DAW suffered, and continues to suffer significant decreased in its sales volume of DAW's knees, not only its SLK knee, but all DAW knees and DAW's general sales.

87.   Hanger and Otto Bock continued their campaign against DAW.

88.   In January 2005, Hanger decreed that DAW could not represent its SLK knee as having a micro-processor at the Hanger Education Fair and that DAW could not even distribute its literature at the fair.

89.  ·  Given the obvious bias that Hanger exhibited against DAW—in furtherance of Hanger and Otto Bock's anti-competitive conspiracy and campaign against DAW—DAW brought its concerns to the senior executives of Hanger.

90.   In furtherance of their anti-trust campaign and conspiracy with Otto Bock against DAW, Hanger then threatened to withhold all payments to DAW.

91.   In furtherance of their conspiracy and campaign against DAW, Hanger, in collusion with its co-conspirator Otto Bock and other defendants, expanded its misrepresentations concerning DAW's SLK micro-processor knee unit, even going so far as to spread these lies to the AAOP director of advertising, attacking DAW's advertising of its SLK knee.

92.   In furtherance of its combination and conspiracy against DAW, Hanger, with its co-conspirator Otto Bock and the other defendants, began making telephone calls to DAW to obtain information—misrepresenting the name of the Hanger executive—Berry—making the call.

93.   Throughout 2005 and continuing even to the present, Hanger in combination and ·  · ·  conspiracy with its co-conspirators Otto Bock and the other defendants, has used its market dominance and its dominance of the AAOP to carry on a persistent campaign of lies and misrepresentations concerning DAW's micro-processor SLK knee.

94.   Hanger and Otto Bock's motives are clear—they want to eliminate DAW's competing micro-processor knee.

95.   Worse, Hanger and Otto Bock sell the Otto Bock C-Leg knee to practitioners for twice the price of the DAW SLK knee, thereby substantially increasing the cost to the state and federal entities, and third-party payors.  Such knee systems can cost upwards of $40,000 for each

amputee.

## FIRST CAUSE OF ACTION

### (Restrain Of Trade In Violation Of The Cartwright Act—Business & Professions Code § 16720 – Against All Defendants)

96.    DAW realleges and incorporates by reference the allegations contained in paragraphs 1 through 95, inclusive.

97.    At all relevant times, Hanger, Otto Bock and their co-conspirator defendants violated the Cartwright Act, Business & Professions Code §§ 16720, *et seq.* in that defendants, and each of them, formed one or more illicit contracts for combinations to accomplish purposes prohibited by and contrary to, the public policy of the State of California.

98.    The actions of defendants, and each of them, constituted prohibitive restraints on competition within the meaning of Business & Professions Code § 16720(a) and the conduct of alleged unreasonably restrained trade or commerce.

99.    The actions of the defendants, and each of them, violated Business & Professions Code § 16720(c) because the defendants used their market dominance to raise barriers of entry and to crush competition in the marketing, sale and distribution of, among other products, DAW's SLK knee.

100.    The actions of the defendants and each of them violated Business & Professions Code § 16720(e)(3) in that the defendants combined and/or conspired to elevate the prices from the micro-processor knees precisely because they attempted to eliminate—and in the main succeeded—in eliminating DAW's micros-processor knee as a competitive product.

101.    The actions of the defendants, and each of them, violated Business & Professions Code § 16720(e)(4) in that defendants, and each of them, agreed illegally to pool, combine, directly and indirectly, to unite their interests in promoting their products and to keep competitive products from DAW off the marketplace.

102.    As a direct and legal result of Hanger's, Otto Bock's and other co-conspirator defendants' conduct, and the conduct of each of them, DAW Industries has been injured in its business and property, all which injuries have caused and continue to cause DAW damage in a

1    sum in excess of the jurisdictional limits of this Court, according to proof.  The estimated damages

2    before trebling are in the millions of dollars.

3          103.    As a further and direct legal result of the acts of defendants, and each of them,

4    DAW Industries was required to act in the protection of its interests by filing this action, and it

5    incurred attorneys' fees, and other expenses in a sum to be proven at trial.

6          104.    Pursuant to Business & Professions Code § 16750, DAW is authorized to recover

7    three times the damages that it has sustained, plus interest on such actual damages and reasonable

8    attorneys' fees, together with costs of suit.

9                          SECOND CAUSE OF ACTION

10       (Restrain Of Trade In Violation Of The Cartwright Act—Business & Professions

11                  Code §§ 16720, et seq. – Against All Defendants)

12         105.    DAW realleges and incorporates by reference the allegations contained in

13    paragraphs 1 through 104, inclusive.

14         106.    The conduct of Hanger and Otto Bock and their co-conspirator defendants alleged

15    above, constitutes a combination and conspiracy to monopolize the market for the sale of micro-

16    processor prosthetic knees in violation of Business & Professions Code § 16720(a) in that, the

17    conduct alleged created or carried out restrictions in trade or commerce.

18         107.    Hanger and Otto Bock and their co-conspirator defendants designed and

19    implemented their combination and conspiracy with a specific intent to monopolize the market for

20    micro-processor knees and committed overt acts and engaged in concerted action in furtherance of

21    their combination and conspiracy to monopolize, as described above, including but not limited to

22    their campaign to disparage DAW's SLK knee, among other products, precisely because it was a

23    competitive product.  This raised the price of such knees both in California and across the country.

24    Hanger and Otto Bock, and their co-defendants co-conspirators had the market power to create a

25    monopoly as described above, and conspired to do so.

26         108.    There was and is a dangerous probability of success of achieving monopoly power

27    in the relevant market.  These defendants did achieve monopoly power in the relevant market.

28         109.    There were significant barriers to entry to prevent new companies from threatening

1  defendants monopoly power.

2      110.   As a direct and legal result of Hanger's, Otto Bock's and their co-conspirator

3  defendants' conduct, and the conduct of each of them, DAW Industries has been injured in its

4  business and property, all which injuries have caused and continue to cause DAW damage in a

5  sum in excess of the jurisdictional limits of this Court, according to proof. The estimated damages

6  before trebling are in the millions of dollars.

7      111.   As a further and direct legal result of the acts of defendants, and each of them,

8  DAW Industries was required to act in the protection of its interests by filing this action, and it

9  incurred attorneys' fees, and other expenses in a sum to be proven at trial.

10      112.   Pursuant to Business & Professions Code § 16750, DAW is authorized to recover

11  three times the damages that it has sustained, plus interest on such actual damages and reasonable

12  attorneys' fees, together with costs of suit.

13                          **THIRD CAUSE OF ACTION**                          -

14  **(Unfair Competition and Unlawful Business Practices, California Business & Professions**

15                  **Code §§ 17200, *et seq.* – Against All Defendants)**

16      113.   DAW realleges and incorporates by reference the allegations contained in

17  paragraphs 1 through 112, inclusive.

18      114.   Hanger and Otto Bock and their co-conspirator defendants, and each of them,

19  individually and in concert, have engaged in unfair, unlawful and fraudulent business practices

20  within the meaning of Business & Professions Code § 17200  As alleged above, their acts of

21  unfair competition include, but are not limited to, those actions alleged in the following

22  paragraphs.

23      115.   The actions of defendants, as alleged above, constitute unlawful, unfair or

24  fraudulent business practices in violation of Business & Professions Code § 17200, *et seq.* by

25  acting, and conspiring to act, to monopolize and restrain trade in the prosthetic knee market

26  throughout California and across the country in violation of the Cartwright Act.

27      116.   At all relevant times, all defendants, and each of them, violated the Cartwright Act,

28  Business & Professions Code §§ 16720, *et seq.*, in that defendants, and each of them, have

P. 16          763-519-9017          Otto Book          May 11 06 09:53a

1    engaged in a combination and conspiracy to control and dominate the market for prosthetic knees

2    in California and across the United States.

3        117.    The combination and conspiracy is *per se* illegal under the Cartwright Act.

4        118.    At all relevant times all defendants, and each of them, violated the Cartwright Act

5    in that defendants, and each of them, formed one or more elicit contracts or combinations to

6    accomplish purposes prohibited by and contrary to the public policies of the State of California.

7    The actions of the defendants, and each of them, constitute prohibitive restraints on competition

8    within the meaning of Business & Professions Code § 16720(a) in that the conduct alleged

9    unreasonably restrained trade or commerce.

10       119.    The actions of the defendants, and each of them, violated Business & Professions

11    Code § 16720(c) because the defendants, and each of them, use their market dominance to raise

12    barrier to entry and to crush, competition in the prosthetic knee industry.

13       120.    The actions of the defendants, and each of them, violated Business & Professions

14    Code § 16720(e) in that defendants combined or conspired to elevate the price of micro-processor

15    prosthetic knees and increase the cost of such devices both in California and across the country.

16       121.    The actions of the defendants, and each of them, violate Business & Professions

17    Code § 16720(e) in that the defendants agreed illegally to pool or combine, directly or indirectly,

18    to unite their interests to prevent DAW's micro-processor knee from competing with them both in

19    California and across the country.

20       122.    The conduct alleged constitutes a combination and conspiracy to monopolize the

21    market for the sale of micros-processor knees in violation of Business & Professions Code

22    § 16720(a) in that the conduct alleged created or carried out restrictions in trade or commerce.

23       123.    Defendants, and each of them, designed and implemented their combination and

24    conspiracy with the specific intent to monopolize the relevant markets as alleged, and committed

25    overt acts and engaged in concerted action in furtherance of their combination and conspiracy to

26    monopolize, as described above, including but not limited to misrepresenting and defaming

27    DAW's SLK knee. This raised the price of such devices both in California and across the country.

28       124.    Defendants had the market power to create a monopoly as described above and

1  conspired together to do so.

2      125.  There was and is a dangerous probability of successful achieving a monopoly

3  power in the relevant market.

4      126.  Defendants did achieve monopoly power in the relevant market.  There were

5  significant barriers for entry to prevent new companies from threatening their monopoly power.

6      127.  The acts and practices of defendants, as alleged, constitutes unlawful, unfair or

7  fraudulent business practices in violation of Business & Professions Code § 17200, *et seq.* in that

8  their conduct is immoral, unscrupulous, anti-competitive and offends public policy, and the

9  gravity of the conduct detailed in this complaint outweighs any benefit attributable to such

10  conduct.

11      128.  The acts and practices of defendants, as alleged, constitutes unlawful, unfair or

12  fraudulent business practices in violation of Business & Professions Code §§ 17200, *et seq.* in that

13  the conduct involves and threatens and is an incipient violation of anti-trust law, or violates the

14  policy or spirit of one of those laws because its effects are compatible to or the same as violations

15  of the law, or otherwise significantly threatens or harms competition.

16      129.  DAW is informed and believes that the actions of each of them, as alleged, were

17  intended to destroy competition within the prosthetics industry.

18      130.  The actions of the defendants, and each of them, in violation of the Cartwright Act

19  as alleged significantly harms competition in the prosthetic industry in California and across the

20  country.

21      131.  These wrongful acts have proximately causes and will continue to cause amputees

22  and their insurance carriers and state and federal governmental entities—including the Veterans

23  Administration—substantial injury including, but not limited to, the payment of artificially

24  inflated prices for such prosthetic devices.

25      132.  DAW, pursuant to Business & Professions Code § 17203, seeks an order of this

26  Court preliminarily and permanently enjoining defendants' wrongful conduct.  As a further direct

27  and legal result of defendants' conduct, and the conduct of each of them, DAW also seeks an order

28  directing defendants to disgorge all illegal profits that resulted from their violation of Business &

1  Professions Code §§ 17200, *et seq.*

2      133.   As a further and direct and legal result of defendants' acts, and the acts of each of

3  them, DAW was required to act in the protection of its interests by filing this action and have

4  incurred attorneys' fees and other expenditures in a sum to be proven at trial.

5  <div align="center">FOURTH CAUSE OF ACTION</div>

6  <div align="center">(Trade Liable – Against All Defendants)</div>

7      134.   DAW realleges and incorporates by reference the allegations contained in

8  paragraphs 1 through 133, inclusive.

9      135.   The conduct alleged also constitutes trade libel.

10      136.   Hanger, in combination and conspiracy with Otto Bock, has engaged in the

11  intentional disparagement of the quality of the property of DAW—specifically its SLK knee—

12  resulting in money damages to DAW.

13      137.   As a direct and proximate result of defendants' intentional disparagement of the

14  quality of the property of DAW, DAW has suffered money damages in an amount not presently

15  known but which is believed to exceed millions of dollars and which will be proved at trial.

16      138.   Hanger and Otto Bock's conduct, and that of their co-conspirator defendants,

17  constitutes an intentional misrepresentation, false defamatory statements and/or the concealment

18  of material facts known to them, all with the intention of causing injury to DAW, and was

19  oppressive, fraudulent and malicious conduct as defined in California Civil Code § 3294, and

20  DAW should recover, in addition to actual damages, exemplary and punitive damages according

21  to proof.

22      139.   This despicable conduct of Hanger and Otto Bock and their co-conspirator

23  defendants subjected DAW to cruel and unjust hardship in conscious disregard of its rights, such

24  that it justifies an award of exemplary and punitive damages.

25      140.   As a direct and proximate result, DAW has suffered money damages in excess of

26  the jurisdictional limit of this Court, in an amount to be proven at trial.

27      WHEREFORE, plaintiffs pray for judgment against defendants, and request relief as

28  follows:

p.19                     763-619-9017                 Otto Bock        09:55 90 11 yaM

**AS TO THE FIRST CAUSE OF ACTION:**

1. For general damages, trebled, in a sum according to proof;

2. For restitution and unjust enrichment; and

3. For special damages including, but not limited to, attorneys' fees and other expenditures incurred in the prosecution of the action.

**AS TO THE SECOND CAUSE OF ACTION:**

1. For general damages, trebled, in a sum according to proof;

2. For restitution and unjust enrichment; and

3. For special damages including, but not limited to, attorneys' fees and other expenditures incurred in the prosecution of the action.

**AS TO THE THIRD CAUSE OF ACTION:**

1. For the injunctive and declaratory relief pursuant to Business & Professions Code § 17203;

2. For restitution and unjust enrichment; and

3. For interest on moneys disgorged at the legal rate.

**AS TO THE FOURTH CAUSE OF ACTION:**

1. For preliminary and injunctive relief against Hanger and Otto Bock;

2. For a money judgment against Hanger and Otto Bock, for DAW's actual damages, exemplary or punitive damages, interest, costs and reasonable attorneys fees; and

3. For restitution according to proof.

**AS TO ALL CAUSES OF ACTION:**

1. For costs of suit; and

2. For such other and further relief as the Court deems just and proper.

DATED: May 8, 2006                    SOLOMON WARD SEIDENWURM & SMITH, LLP

By: _____
    EDWARD J. MCINTYRE
    Attorneys for DAW INDUSTRIES, INC.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## INDEPENDENT CALENDAR CLERK
330 W. Broadway
San Diego, CA 92101

TO:

EDWARD J. MCINTYRE
SOLOMON WARD SEIDENWURM & SMITH LLP
401 B STREET #1200
SAN DIEGO, CA  92101

| | |
|---|---|
| DAW INDUSTRIES INC | Case No.:   GIC865613 |
| Plaintiff(s) | **NOTICE OF CASE ASSIGNMENT** |
| vs. | Judge:   JOAN M. LEWIS |
| HANGER ORTHOPEDIC GROUP INC | Department:   65 |
| Defendant(s) | Phone:   619-685-6018 |

COMPLAINT FILED  05/08/06

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil consists of all cases except:  Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS:  Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing.  This is a mandatory document and may not be substituted by the filing of any other document. (Rule 2.5)

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.) (Rule 2.6)

DEFAULT:  If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service. (Rule 2.7)

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE.  MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS.- SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE.  THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO TO ARBITRATION PURSUANT TO CCP 1141.10.  THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING.

ALSO SEE THE ATTACHED NOTICE TO LITIGANTS.

### CERTIFICATE OF SERVICE
I certify that I am not a party to the above-entitled case; on the date shown below, I served this notice on the parties shown by personally handing it to the attorney or their personal representative at    SAN DIEGO California.

DATED: 05/08/06

BY: CLERK OF THE SUPERIOR COURT

SDSC CIV-721(Rev 7-03)          ASG-NOTICE OF CASE ASSIGNMENT

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
INDEPENDENT CALENDAR CLERK
330 W. Broadway
San Diego, CA 92101

TO:

| | |
|---|---|
| DAW INDUSTRIES INC<br><br>Plaintiff(s)<br><br>vs.<br><br>HANGER ORTHOPEDIC GROUP INC<br>Defendant(s) | **Case No.:  GIC865613**<br><br>**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS**<br><br>(CRC 1590.1)<br><br>Judge:  JOAN M. LEWIS<br>Department:  65 |

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process.  Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program
☐ Private Neutral Evaluation
☐ Private Mini-Trial
☐ Private Summary Jury Trial
☐ Private Settlement Conference With Private Neutral
☐ Other (specify):

☐ Court-Ordered Nonbinding Arbitration (Cases valued at $50,000 or less)
☐ Court-Ordered Binding Arbitration (Stipulated)
☐ Private Reference to General Referee
☐ Private Reference to Judge
☐ Private Binding Arbitration

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

Alternate: (mediation & arbitration only) _____

| | |
|---|---|
| Date: _____ | Date: _____ |
| Name of Plaintiff | Name of Defendant |
| Signature | Signature |
| Name of Plaintiff's Attorney | Name of Defendant's Attorney |
| Signature | Signature |

(Attach another sheet if additional names are necessary).  It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, Rule 225.  Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all unserved, non-appearing or actions by named parties are dismissed.

IT IS SO ORDERED.

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359(Rev. 8-03)     ADR-STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION PROCESS

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Use of Alternate Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

### ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court has established a Civil Mediation Program to replace the Mediation Pilot Program established by Code of Civil procedure sections 1730 et seq. The Civil Mediation Program, in effect for cases filed on or after May 1, 2003 or upon stipulation, is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participate in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for court-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court Local Rules Division II Chapter III and Code of Civil Procedure 1141 et seq. address this program specifically.

SDSC CIV-730 (Rev. 11-04)

1   EDWARD J. MCINTYRE [SBN 80402]
    EMcintyre@swsslaw.com
2   SOLOMON WARD SEIDENWURM & SMITH, LLP
    401 B Street, Suite 1200
3   San Diego, California 92101
    Telephone: (619) 231-0303
4   Facsimile: (619) 231-4755

5   Attorneys for DAW INDUSTRIES, INC.

6

7

8                   SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF SAN DIEGO

10

11   DAW INDUSTRIES, INC., a California     CASE NO. GIC 865613
    corporation,
12                               NOTICE OF *EX PARTE* HEARING TO
                                HANGER ORTHOPEDIC GROUP, INC.,
13           Plaintiff,               DALE BERRY AND OTTO BOCK
                                HEALTHCARE, USA
14     v.

15   HANGER ORTHOPEDIC GROUP, INC.;
    OTTO BOCK HEALTHCARE, USA; and     Date:     May 16, 2006
16   DOES 1 through 10, inclusive,         Time:     8:30 a.m.
                                Dept.     65
17           Defendants.
                                For Hon. Joan M. Lewis
18

19

20

21

22

23

24

25

26

27

28

05/15/2006 12:27 FAX 763 5   153     OTTO BOCK                                    ☒003

1    TO: Hanger Orthopedic Group, Inc., Dale Berry and Otto Bock Healthcare, USA:

2    PLEASE TAKE NOTICE that DAW will make an *ex parte* application to preserve

3 evidence on May 16, 2006, at 8:30 a.m. in Department 65 of the San Diego Superior Court,

4 located at 330 West Broadway, San Diego, California 92101.

5

6 DATED: May 12, 2006                    SOLOMON WARD SEIDENWURM & SMITH, LLP

7

8                                         By:   *Edward J. McIntyre*
                                                EDWARD J. MCINTYRE
9                                               Attorneys for DAW INDUSTRIES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F I L E D
Clerk of the Superior Court

MAY 1 6 2006

By: SCOTT SEYLER, Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| DAW INDUSTRIES, INC., a California corporation, | CASE NO. GIC 865613 |
| Plaintiff, | **STIPULATION CONCERNING THE PRESERVATION OF EVIDENCE AND ORDER** |
| v. | |
| HANGER ORTHOPEDIC GROUP, INC.; OTTO BOCK HEALTHCARE, USA; and DOES 1 through 10, inclusive, | Date:     May 16, 2006<br>Time:     8:30 a.m.<br>Dept.     65 |
| Defendants. | For Hon. Joan M. Lewis |

P:285787.1:57089.003                                                                GIC 865613

STIPULATION CONCERNING THE PRESERVATION OF EVIDENCE AND ORDER

1    WHEREAS Plaintiff Daw Industries, Inc. filed this action on May 8, 2006 naming,

2  among other defendants, Hanger Orthopedic Group, Inc. ("Hanger");

3    WHEREAS defendant Hanger's registered agent for service of process was served with

4  the complaint on May 15, 2006;

5    WHEREAS it is premature for Hanger to file a responsive pleading;

6    WHEREAS counsel for Hanger makes this special appearance to enter the stipulation

7  set forth below for the limited purpose of preserving evidence;

8    WHEREAS, by entering into this stipulation, Hanger does not make a general

9  appearance, or consent to or otherwise submit itself to the jurisdiction of the court;

10    WHEREAS the complaint alleges that non-party Dale Berry is Vice President of

11  Clinical Operations and part of Hanger's senior prosthetics management team;

12    NOW, THEREFORE, it is hereby stipulated by and between plaintiff, DAW Industries,

13  Inc. and Hanger Orthopedic Group, Inc., as follows:

14    1.    Neither defendant Hanger Orthopedic Group, Inc. nor its executive, Dale

15  Berry, shall delete any data from any computer in Mr. Berry's custody, possession or under

16  his control until further order of this Court; and

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

STIPULATION CONCERNING THE PRESERVATION OF EVIDENCE AND ORDER

1    2.    Neither plaintiff, DAW Industries, Inc., nor Hanger Orthopedic Group, Inc.,

2  shall destroy any potential evidence in this case that is in the custody, possession or under

3  the control of the respective party until further order of this Court.

4

5  DATED: May 15, 2006                    SOLOMON WARD SEIDENWURM & SMITH, LLP

6                                         By: _____

7                                              EDWARD J. MCINTYRE
                                               Attorneys for DAW INDUSTRIES, INC.
8

9  DATED: May 15, 2006                    FOLEY & LARDNER, LLP

10                                        By: _____

11                                             MICHAEL P. MCCLOSKEY
                                               Specially Appearing for HANGER
12                                             ORTHOPEDIC GROUP, INC.

13

14                               O R D E R

15      IT IS SO ORDERED.

16  Dated:  5-16-06                            JOAN M. LEWIS

17                                         HON. JOAN M. LEWIS
                                           JUDGE OF THE SUPERIOR COURT
18

19

20

21

22

23

24

25

26

27

28

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

## I. (a) PLAINTIFFS
Daw Industries, Inc.

## DEFENDANTS
Hanger Orthopedic Group, Inc.; Otto Bock Healthcare, US; and DOES 1 through 60, inclusive

'06CV 1222   JAH NLS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Edward McIntyre, Bar No. 80402
Solomon Ward Seidenwurm & Smith, LLP
401 B. Street, Suite 1200
San Diego, CA  92101
619-231-0303

ATTORNEYS (IF KNOWN)
Michael P. McCloskey, Bar No. 106051
Foley & Lardner LLP
402 W. Broadway, 23rd Fl.
San Diego, CA  92101
619-234-6655

## II. BASIS OF JURISDICTION   (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES   (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 U.S.C. section 1332 - Diversity
Jurisdiction: Alleged Violations of California Antitrust Laws and Alleged Trade Libel

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 382 Personal Injury - Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motion to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Conditions | | | |

## VI. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)
☐ 1 Original Proceeding
☒ 2 Removal from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY   (See instructions):
JUDGE _____   Docket Number _____

DATE   9 Jun 06

SIGNATURE OF ATTORNEY OF RECORD

#125941  $350  1/g  6/9/06

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)